Della DIAL, et al., Plaintiffs,

v.

**HEALTHSPRING OF ALABAMA, INC., and Marcus Trotter, Defendants.**

No. CIV.A. 2:07–0412–KDC.

United States District Court,
S.D. Alabama,
Northern Division.

Aug. 9, 2007.

Ted L. Mann, Mann & Cowan, P.C., Birmingham, AL, for Plaintiffs.

Charles B. Paterson, Joseph Seawell Moore, Balch & Bingham, Robert C. Ward, Jr., Bethany L. Bolger, Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, AL, Leigh Anne Hodge, Tyrell Fleming Jordan, Balch & Bingham, Birmingham, AL, Walter E. McGowan, Gray, Langford, Sapp, McGowan & Gray, Tuskegee, AL, for Defendants.

### *ORDER*

DuBOSE, District Judge.

This matter is before the Court on the motion to remand, supporting brief and reply, filed by plaintiffs Della Dial, A.C. Johnson, Nancy Norfleet, Constance Taylor, Abraham Washington, Georgia M. Woods, and Laura B. Washington (docs.6, 7, 13), the response and sur-reply filed by defendants HealthSpring of Alabama, Inc., (docs.11, 16),[1] and Marcus Trotter's joinder in HealthSpring's response (doc. 12). Upon consideration of the pleadings and for the reasons set forth herein, the motion to remand (doc. 6) is **DENIED** and the court shall exercise supplemental jurisdiction over plaintiffs' state law claims.

---

1. On July 16, 2007, defendants filed a motion for leave to file their sur-reply brief (doc. 16). Plaintiffs did not file a response to the motion. The court having considered the motion and sur-reply brief, finds that the motion is due to be and hereby is **GRANTED**.

## I. Background

In 2005, agents or representatives of HealthSpring contacted plaintiffs and solicited their enrollment in a managed health care plan entitled "Seniors First". Prior to the time of their enrollment, the plaintiffs had been covered by Medicare Parts A and B, and were all living on fixed monthly incomes either receiving Social Security retirement benefits or were disabled. Plaintiffs now assert that the benefits and coverage under the Seniors First plan were not as represented by the HealthSpring Seniors First agents and resulted in the plaintiffs incurring additional expense when obtaining healthcare. Additionally, plaintiffs learned they could not unilaterally cancel their coverage or they would lose all coverage.

On May 1, 2007, plaintiffs filed their complaint in the Circuit Court of Perry County, Alabama and brought claims against the defendants for their actions in contacting plaintiffs and allegedly misrepresenting HealthSpring's Seniors First Medicare Advantage product, disenrolling plaintiffs from their existing Medicare coverage, redirecting Medicare premiums to HealthSpring and restricting plaintiffs' Medicare coverage and benefits. Specifically, plaintiffs allege breach of contract (Count I), fraud pursuant to Code of Alabama § 6–5–101 (Count II), fraud by suppression pursuant to Code of Alabama § 6–5–102 (Count III), deceit and fraudulent deceit pursuant to Code of Alabama §§ 6–5–103 and 6–5–104 (Count IV), negligent, reckless, and/or wanton failure to adequately procure and/or maintain insurance (Count V), negligence and wantonness (Count VI), negligent hiring, training and supervision (Count VII), conspiracy to defraud (Count VIII), unjust enrichment/constructive trust (Count IX), breach of implied covenant and/or duty of good faith and fair dealing (Count X), breach of fiduciary duties (Count XI), and intention-al, wanton, reckless and/or negligent infliction of emotional distress (Count XII). (Doc. 1–2, p. 12–33) Plaintiffs seek compensatory and punitive damages.

In the complaint, plaintiffs include the following statement:

5. The Plaintiffs make no claims pursuant to any Federal Law, nor do the Plaintiffs make any claims which would give rise to Federal jurisdiction. Plaintiffs' claims arise solely from state law.

(Doc. 1–2, p. 12–33).

Defendants removed to this court on grounds that plaintiffs' claims for relief arise under the laws of the United States, specifically the Medicare Act, 42 U.S.C. § 1395w–21 thru w–28, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003(MMA). Defendants argue that plaintiffs' state law claims are superseded and preempted by the MMA pursuant to 42 U.S.C. § 1395w–26(b)(3) (2006).

Plaintiffs move to remand the case to the Circuit Court of Perry County, Alabama on grounds that defendants have waived their right to remove this action and have not met their burden of establishing a substantial question of federal law. In opposition, defendants argue that they have not expressed a clear and unequivocal intent to litigate in state court and thus, have not waived their right to remove. Defendants also argue that provisions of the MMA and its implementing regulations completely preempt all of plaintiffs claims and thus the motion to remand should be denied.

## II. Analysis

 Federal courts are courts of limited jurisdiction and only have the power to hear cases authorized by the Constitution or by an Act of Congress. *See Kokkonen v. Guardian Life Ins. Co. of Am.,*

511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Therefore, a removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and bears the burden of establishing the existence of federal jurisdiction. *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir.2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."); *Fowler v. Safeco Ins. Co.*, 915 F.2d 616, 617 (11th Cir.1990). Also, as a grant of subject matter jurisdiction, "removal jurisdiction raises significant federalism concerns,[and] federal courts are directed to construe removal statutes strictly" and resolve all doubts about jurisdiction "in favor of remand to state court." *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999); *see Williams v. AFC Enterprises, Inc.*, 389 F.3d 1185 (11th Cir.2004); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994) ("removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand").

**Federal Question Jurisdiction**

In order for removal to be proper under 28 U.S.C. § 1441, the action removed must be one which originally could have been filed in the district court because it arose under the Constitution, treaties, or laws of the United States, *see* 28 U.S.C. § 1331 [2], i.e., federal question jurisdiction, or there must be complete diversity of citizenship between the defendants. Section 28 U.S.C. § 1441 provides, in pertinent part:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b).

■ The Eleventh Circuit has established that "the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.' " *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida*, 999 F.2d 503, 506–507 (11th Cir.1993) (citation omitted). When considering removal based upon federal question jurisdiction, the court must look to the complaint to determine whether relief can be obtained under a federal statute and not to the defendants' assertion that a federal claim exists. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (to ascertain the existence of a federal question, the courts should apply the "well-pleaded complaint" rule which requires review of the face of the complaint rather than looking to the defenses); *Hansard v. Forsyth County, GA*, 191 Fed. Appx. 844, 846 (11th Cir.2006) (finding that plaintiffs' claim of violation of their rights under the Fifth and Fourteenth Amendments did not "state a federal claim because the Constitution did not create the cause of action alleged" and that the court must review "the complaint to determine what law, state or federal, created any of their claims for relief."); *Newton v. Capital Assurance Co.*, 245 F.3d 1306, 1309 (11th Cir.2001) ("The federal cause of action or question of federal law must be apparent from the face of the well-pleaded complaint and not from a defense or anticipated defense.") (citation omitted).

---

**2.** The section provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

However, two exceptions to the "well-pleaded complaint" rule exist: When a federal statute expressly provides for removal even where the complaint only asserts state law claims and when "a federal statute wholly displaces the state-law cause of action through complete preemption."[3] *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 60, 107 S.Ct. 1542, 1544, 95 L.Ed.2d 55 (1987) (complete preemption existed because the "state common law claims are not only pre-empted by ERISA but also displaced by ERISA's civil enforcement provision.") In order to ascertain whether plaintiffs' state law claims fall under the narrow exception of complete preemption, the court must decide whether "Congress has so fully legislated an area of law such that a plaintiff's state law claims filed in state court are 'necessarily federal in character.' " *Ervast v. Flexible Products, Co.*, 346 F.3d 1007, 1012 (11th Cir.2003) (citation omitted); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–65, 107 S.Ct. 1542, 1546–1547, 95 L.Ed.2d 55 (1987) (an exception exists in cases of "complete pre-emption," where Congress so "completely pre-empt[s] a particular area that any civil complaint ... is necessarily federal in character" such that the statute "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.")

In the Notice of Removal, defendants argue that plaintiffs' state law claims arise under the laws of the United States, specifically the Medicare Act, 42 U.S.C. § 1395w–21 thru w–28, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003(MMA), Pub.L. No. 108–173, 117 Stat. 2066. Defendants argue that the claims all relate to standards established under the MMA as amended and are thus superseded and preempted pursuant to 42 U.S.C. § 1395w–26(b)(3) (2006).[4] Defendants also assert that all of plaintiffs' allegations "relate to the extent or quality of benefits promised or received and claims paid or denied, and thus plaintiffs in effect complain of benefit or coverage determination governed" by the MMA.

In the motion to remand, brief and supplement, plaintiffs argue that no issue of federal law is raised on the face of their complaint, that they bring only state law claims and have sought no relief under federal law, and therefore, there is no federal question jurisdiction. Plaintiffs also argue that their state law claims are not completely preempted by the MMA because the preemption provision applies only to preclude a states's attempt to establish standards relating to or regulating Medicare Advantage plans.[5] Plaintiffs

---

3. As a footnote to the latter, the Supreme Court noted that "[o]f course, a state claim can also be removed through the use of the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), provided that another claim in the complaint is removable." *Beneficial Nat. Bank v. Anderson*, 539 U.S. at 8, n. 3, 123 S.Ct. at 2063 n. 3 (2003).

4. The section entitled "Relation to State laws", sets forth as follows:
 The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage (MA)] plans which are offered by MA organizations under this part.
 42 U.S.C. § 1395w–26(b)(3).

5. Plaintiffs rely upon *Burke v. Humana Ins. Co.*, 1995 WL 841678, *2 (M.D.Ala.1995) and *Grace v. Interstate Life & Accident Ins., Co.*, 916 F.Supp. 1185, 1191 (M.D.Ala.1996). However, both cases were decided before the December 2003 amendments to the Medicare Act became effective. In *Burke*, the district court stated "the defendants have not pointed to any congressional intent to make state-law claims falling within the scope of Medicare,

also argue that its claims are not related to marketing, enrollment, benefit and coverage, and grievance procedures under the Medicare Advantage plan, but instead are claims sounding in tort based upon fraudulent misrepresentation which can be resolved outside of the MMA. Plaintiffs conclude that their claims are not claims regarding coverage determinations, denial of coverage, the organizational compliance or solvency standards, taxes or state licensure requirements for defendant HealthSpring, which would be preempted.[6]

Defendants respond that plaintiffs' claims all relate to standards established under the MMA for Medicare Advantage plans offered by private insurers and are completely preempted by 42 U.S.C. § 1395w–26(b)(3) of the MMA. Section 1395w–26(b)(3), entitled "Relation to State laws" provides that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." Section 232 of the MMA codified at 42 U.S.C. § 1395w–26(b)(3).

Defendants argue that with the enactment of Section 232 in 2003, Congress amended 42 U.S.C. § 1395w–26(b)(3) to establish broader preemption provisions and that this amendment and the legislative history demonstrate that Congress intended the MMA preemption to be broad in scope. Defendants point out that this expansive language was included by the Centers for Medicare and Medicaid Services (CMS), a division of the Department of Health and Human Services, in its implementing regulations[7] for Medicare Advantage plans which includes regulations regarding marketing, solicitation, enrollment and election, complaints by a beneficiary related to disputes concerning services, benefits and coverage, grievances and appeals.[8] Defendants argue that any complaint in these areas, although couched in terms of state law claims, fall within the purview of federal standards established under the MMA and thus are completely preempted by federal law.

Only state law causes of action appear on the face of the complaint. Plaintiffs base their claims upon defendants' act of meeting with the plaintiffs, soliciting their

Medicaid, and laws providing for Medigap policies removable to federal court" and that "[w]ith this conclusion, however, this court has not held that plaintiffs' state-law fraud claims are not 'pre-empted' by Medicare, Medicaid, and the laws relating to Medigap policies. This court has merely held that there is not such 'complete preemption' as would support removal to federal court." *Burke,* at *3. Also, in *Grace,* the defendants did not contend that the plaintiff's claims were preempted by federal law. 916 F.Supp. at 1191.

6. Plaintiffs also argue that the exact allegations were filed by "Brown, L. Phillips, Moton and B. Phillips in Wilcox County, Alabama against the defendants" and other agents but those cases were not removed by defendants, and thus "[i]t is safe to say by HealthSpring not removing the earlier filed cases, the Plaintiffs in this case have not invoked federal question jurisdiction." (Doc. 7, p. 7). Plain-

tiffs provide no evidentiary support or case law to establish that a defendant's litigation decision in one case is evidence of the lack of federal question jurisdiction in another case. This argument is without probative value or merit.

7. "Federal preemption of State law. The standards established under this part supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to the MA plans that are offered by MA organizations." 42 C.F.R. § 422.402.

8. Defendants also argue that the MMA provides for a grievance process for plan beneficiaries to resolve disputes concerning any aspect of the operations, activities or behavior of a Medicare Advantage plan provider and that review in the district court occurs only after exhaustion of this mandatory procedure.

"enrollment in a managed healthcare plan", and representing to plaintiffs that HealthSpring's plan was "better than Medicare", that "they would receive free prescription drugs and health care", that the plan was "endorsed by Medicare" and that plaintiffs could "continue treatment with their regular physicians". (Doc. 1–2, p. 14–16, complaint). Plaintiffs claim that defendants made the following material representations regarding the Seniors First program:

1. That the Plaintiffs' regular physicians recommended and/or endorsed the "Seniors First" healthcare plan and would be part of the plan as a provider;

2. That the Plaintiffs would be covered by the hospital [where] they regularly were treated;

3. That the Plaintiffs would be covered by the physicians [by whom] they regularly were treated;

4. That the "Seniors First" program would cover the Plaintiffs' medical expenses;

5. That the "Seniors First" program would fully pay the Plaintiffs' prescription expenses.

(Doc. 1–2, p. 17, complaint). Plaintiffs assert that they have been duped by defendants' bait and switch tactic and thus defendants have engaged in fraudulent activity which resulted in damages to the plaintiffs. (Id., p. 17–18).

Among the counts, plaintiffs claim damages for fraud pursuant (Count II), fraud by suppression (Count III), and deceit and fraudulent deceit (Count IV). In, at least, each of these counts, a coverage issue appears to be presented. In Count II for fraud, after listing specific acts on the part of defendants, plaintiffs assert that fraud was committed "in that said Defendants misrepresented the terms of coverage, with the intent to deceive." (Id., p. 21). In Count III for fraud by suppression, plaintiffs allege that the defendants had a duty to disclose but instead "concealed and/or withheld [ ] material facts concerning medical coverage procured and underwritten through Defendants." (Id., p. 23). In Count IV for deceit and fraudulent deceit, plaintiffs allege that defendants "misrepresented the terms of the insurance policies". (Id., p. 25).

At this time, the court is only aware of one Circuit Court to address the preemptive effect of 42 U.S.C. § 1395w–26(b)(3), did so in the context of whether the section expressly preempted application of Puerto Rico Law 72 which had been interpreted to prohibit a Medicare Advantage plan from participating in Medicare Platino. *First Medical Health Plan, Inc. v. Vega–Ramos*, 479 F.3d 46 (1st Cir., 2007).[9] The decision

---

9. In Puerto Rico, Administracion de Servicios de Salud de Puerto Rico (ASES) controls which Medicare Advantage plans may participate in Medicare Platino, an ASES-administered program to provide Medicare Part D drug prescription assistance to dual recipients of Medicare and Medicaid. *Id.* at 49. Vega–Ramos, ASES Director, asserted that under Law 72, "it could not allow any Medicare Advantage plan to join Medicare Platino if the plan owned or operated health facilities that could provide covered services to a Medicare Platino covered beneficiary." *Id.* The law was concerned with the possibility of self-dealing. *Id.* First Medical owned such facilities and was denied participation. *Id.* First

Medical filed suit in federal district court and argued that the law was a "standard" and preempted by federal Medicare law, specifically, 42 U.S.C. § 1395w–26(b)(3). *Id.* at 49–50. Vega–Ramos appealed from the district court's decision to grant an injunction to stop ASES from prohibiting First Medical's participation in Medicare Platino, finding that Law 72 was preempted. The First Circuit vacated the injunction and found that Law 72 was not preempted in this circumstance and thus "ASES was not precluded by federal *Medicaid* law from enforcing Law 72 to exclude First Medical from participating in Medicare Platino" *Id* at 53 (italics added).

in *First Medical* turned on whether the benefits were provided through Medicaid or Medicare. Vega–Ramos argued, and the First Circuit agreed, that Medicare Platino was not a *Medicare* program but rather a *Medicaid* program and thus outside the preemptive scope of § 1395w–26(b)(3). *Id* at 51–52 (italics added). The First Circuit stated that "[u]nder this view, Law 72 is not a prohibited Commonwealth 'standard' for operation of a Medicare Advantage plan operating under Medicare Part C, but rather a permissible eligibility requirement for an entity wishing to participate in a Puerto Rico Medicaid program." *Id* at 52.

Although factually dissimilar, the First Circuit discussed the Congressional intent behind enacting 42 U.S.C. § 1395w–26(b)(3), stating as follows:

> The primary issue before us is whether 42 U.S.C. § 1395w–26(b)(3) expressly preempts application of Puerto Rico Law 72 in these circumstances. Express preemption occurs when Congress has unmistakably ... ordained that its enactments alone are to regulate a subject matter and state laws regulating that subject must fall. Congress's intent is the ultimate touchstone of an express preemption analysis. In determining the preemptive scope of a congressional enactment, courts rely on the plain language of the statute and its legislative history to develop a reasoned understanding of the way in which Congress intended the statute to operate. The federal preemption provision relied on by First Medical states that "the standards established" under federal law for Medicare Advantage plans operating under Medicare Part C shall "supersede any State law or regulation (other than State licensing laws or State laws related to plan solvency)." 42 U.S.C. § 1395w–26(b)(3). The legislative history of this provision clarified that "the MA is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." H. Conf. Rep. 108–391 at 557, reprinted in 2003 U.S.C.C.A.N. at 1926

> . . . . .

> As mentioned above, Congress's purpose in enacting § 1395w–26(b)(3) was to protect the purely federal nature of Medicare Advantage plans operating under Medicare....

*First Medical,* 479 F.3d at 51–52(some internal citations, quotations and footnotes omitted).

Ultimately, the Court in *First Medical* implies that had Medicare Platino been a Medicare program instead of a Medicaid program, preemption would have applied. Specifically, the First Circuit noted that "[i]ndeed, it is undisputed that First Medical operates as a Medicare Advantage plan in Puerto Rico without having to satisfy Commonwealth standards unrelated to licensing or plan solvency." *Id.* at 53, n. 4.

Additionally, in *Uhm v. Humana, Inc.,* No. 06–0815, 2006 WL 1587443 (W.D.Wash., June 2, 2006), the District Court held that state tort and contract claims were preempted by the MMA, specifically § 423.440(a) which states that "[t]he standards established under this part supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) for Part D plans offered by Part D plan sponsors." 42 C.F.R. § 423.440(a). In *Uhm,* plaintiffs brought claims for breach of contract, violation of state consumer protection statutes, unjust enrichment, fraud, and fraud in the inducement because, after numerous requests, forms and instructions for mail ordering of drugs (as required under Humana's plan) were not provided to them and they were forced to purchase their prescription drugs out-of-pocket at retail

prices. *Id.* at *2. Although the *Uhm* case involved Part D benefits the operative language of § 423.440(a) is identical to the section at issue.

The *Uhm* court focused on the plain meaning of the statutory language and found that "[t]he language of the MMA preemption clause is clear: if Part D establishes standards that cover plaintiffs' claims, then those standards supersede state law, and plaintiffs' state law claims are preempted." *Id.* at *2. The court found preemption consistent with the structure and purpose of the MMA and that Congress intended that the federal program operate under federal rules with a uniform set of grievance standards for plan participants. *Id.* at *4.

■ This court finds *Uhm* and *First Medical* persuasive. Accordingly, the court finds that the legislative history and Congressional intent establish that the preemption provision of the MMA was intended to preempt state law applicable to areas for which the MMA has established regulations or standards.

■ The court now looks to whether standards exist under Part C which address the plaintiffs' claims and consequently, whether plaintiffs' state law claims are preempted. The regulations codified at 42 C.F.R. § 422.80 regulate marketing materials and election forms used by Medicare Advantage organizations such as the defendant HealthSpring. Marketing materials are defined as including "any informational materials targeted to Medicare beneficiaries" which promote the Medicare Advantage plan, inform Medicare beneficiaries about enrollment, explain the benefits of enrollment, and explain how Medicare services are covered under the Medicare Advantage plan. 42 C.F.R. § 422.80(b)(1)-(4). The section also provides a list of examples of marketing materials which includes items such as presentation and promotional materials, general audience materials (newspapers, radio), letters, membership communication materials (handbooks, wallet card instructions), and membership or claims processing activities. *Id.,* at (b)(5).

Paragraph (a) of 42 C.F.R. § 422.80 explains that the Medicare Advantage organization should submit its marketing materials and election forms to CMS at least forty-five days before the date of distribution and that CMS will review the materials and forms under the guidelines of paragraph (c). The regulation further states that the Medicare Advantage organization may distribute, if CMS "does not disapprove the distribution of new material or form." *Id.* at (a)(1)(i-ii). A shorter alternative method exists if CMS deems the Medicare Advantage organization to meet certain performance requirements or the organization certifies that its marketing materials followed the guidelines or used model language. *Id.* at (a)(2). Under paragraphs (a) and (c), approval, or the absence of disapproval, is based upon a CMS determination that the marketing materials:

(1) Provide, in a format (and, where appropriate, print size), and using standard terminology that may be specified by CMS, the following information to Medicare beneficiaries interested in enrolling:

(i) Adequate written description of rules (including any limitations on the providers from whom services can be obtained), procedures, basic benefits and services, and fees and other charges.

(ii) Adequate written description of any supplemental benefits and services.

(iii) Adequate written explanation of the grievance and appeals process, including differences between the two, and when it is appropriate to use each.

(iv) Any other information necessary to enable beneficiaries to make an informed decision about enrollment.

(2) Notify the general public of its enrollment period (whether time-limited or continuous) in an appropriate manner, through appropriate media, throughout its service and continuation area.

(3) Include in the written materials notice that the MA organization is authorized by law to refuse to renew its contract with CMS, that CMS also may refuse to renew the contract, and that termination or non-renewal may result in termination of the beneficiary's enrollment in the plan.

(4) Are not materially inaccurate or misleading or otherwise make material misrepresentations.

(5) For markets with a significant non-English speaking population, provide materials in the language of these individuals.

42 C.F.R. § 422.80(c).

Also, paragraph (e) of 42 C.F.R. § 422.80 sets forth the standards for Medicare Advantage organization marketing, which includes an admonition to the effect that in "conducting marketing activities, MA organizations may not . . . [e]ngage in activities that could mislead or confuse Medicare beneficiaries, or misrepresent the MA organization" as well as to "[e]stablish and maintain a system for confirming that enrolled beneficiaries have in fact, enrolled in the MA plan, and understand the rules applicable under the plan." 42 C.F.R. § 422.80(e)(1)(iv) & (e)(2)(ii).

Additionally, 42 C.F.R. § 422.562, captioned "General Provisions", sets forth the responsibilities of the MA organization and the rights of the enrollees as follows:

(b) Rights of MA enrollees. In accordance with the provisions of this subpart, enrollees have the following rights:

(1) The right to have grievances between the enrollee and the MA organ-

ization heard and resolved, as described in § 422.564.

(2) The right to a timely organization determination, as provided under § 422.566.

(3) The right to request an expedited organization determination, as provided under § 422.570.

(4) If dissatisfied with any part of an organization determination, the following appeal rights:

(i) The right to a reconsideration of the adverse organization determination by the MA organization, as provided under § 422.578.

(ii) The right to request an expedited reconsideration, as provided under § 422.584.

(iii) If, as a result of a reconsideration, an MA organization affirms, in whole or in part, its adverse organization determination, the right to an automatic reconsidered determination made by an independent, outside entity contracted by CMS, as provided in § 422.592.

(iv) The right to an ALJ hearing if the amount in controversy is met, as provided in § 422.600.

(v) The right to request MAC review of the ALJ hearing decision, as provided in § 422.608.

(vi) The right to judicial review of the hearing decision if the amount in controversy is met, as provided in § 422.612.

42 C.F.R. § 422.562(b).

Also, 42 C.F.R. § 422.566, captioned "Organization Determinations", states that Medicare Advantage organizations must have procedures for making timely organization determinations and standard procedures governing the time frame for notifying enrollees of the decisions. Among these organization determinations are deci-

sions regarding payment, coverage, and discontinuation or reduction of services. Section 422.566 specifically includes "[t]he MA organization's refusal to provide or pay for services, in whole or in part, including the type or level of services, that the enrollee believes should be furnished or arranged for by the MA organization." § 422.566(b)(3).

The Court acknowledges plaintiffs' reliance upon a section of the CMS's Final Rules for its explanation that in areas where the Federal Government has no authority to regulate, such as state tort law and private contracting relationships, Part D prescription plan sponsors would be subject to state law. (Doc. 13-5). The section of the Final Rules set forth as follows:

> In areas where we have neither the expertise nor the authority to regulate, we do not believe that State laws would be superseded or preempted. For example, State environmental laws, laws governing private contracting relationships, tort law, labor law, civil rights laws, and similar areas of law would, we believe, continue in effect and PDP sponsors in such States would continue to be subject to such State laws. Rather, our Federal standards would merely preempt the State laws in the areas where the Congress intended us to regulate—such as the rules governing pharmacy access, formulary requirements for prescription drug plans, and marketing standards governing the information disseminated to beneficiaries by PDP sponsors. We believe this interpretation of our preemption authority is in keeping with principles of Federalism, and Executive Order 13132 on Federalism, which requires us to construe preemption statutes narrowly. (69 FR 46696.)

Final Rule, Centers for Medicare & Medicaid Services, Medicare Program; Medicare Prescription Drug Benefit, 70 Fed.Reg. 4194, 4319 (January 28, 2005).

The paragraphs preceding the above quote explain the extent of preemption as to Medicare Advantage plans under Part C, as follows:

> We concluded that the MMA reversed this presumption and provided that State laws are presumed to be preempted unless they relate to licensure or solvency. We also referenced the Congress' intent that the MA program, as a Federal program, operate under Federal rules, and referred to the Conference Report of the MMA as making clear the Congress' intent to broaden the scope of preemption through its change to section 1856(b)(3) of the Act. See 69 FR 46866, 46904. We believe that because the Congress incorporated the same preemption standard into the Part D program, and because the Congress required the preemption rules to apply consistently in Parts C and D, this same reasoning would apply to Part D.
>
> In addition, in the proposed rule for Part D, we stated that although the Congress included broad preemption rules in section 1856(b)(3) of the Act, we did not believe that the Congress intended for each and every State requirement applying to PDP sponsors to become null and void.

*Id.* at *4319.

While the section of the Final Rule quoted by the plaintiffs may give the impression that state tort law and state law regarding private contracting rights are not preempted by Section 232, the Final Rule states that the "[f]ederal standards would merely preempt the State laws in the areas where the Congress intended us to regulate". *Id.* Additionally, the Final Rules also "referenced the Congress' intent that the MA program, as a Federal program, operate under Federal rules, and

referred to the Conference Report of the MMA as making clear the Congress' intent to broaden the scope of preemption through its change to section 1856(b)(3) of the Act." *Id.* Also, in the Final Rules the CMS addressed a comment from an insurer, and stated as follows:

As noted in the proposed rule, we do not believe that either the principles of Federalism or the statute justify such a broad preemption interpretation. We do not believe, for example, we could preempt all State environmental or civil rights laws, nor do we believe it was the Congress' intent to do so. The preemption in section 1860D–12(g) of the Act is a preemption that operates only when CMS actually creates standards in the area regulated. To the extent we do not create any standards whatsoever in a particular area, we do not believe preemption would be warranted.

*Id.* Thus, the Final Rule does not provide a blanket reprieve from preemption for all state tort claims and all state private contracting claims. Reprieve occurs only when the state law claims arise in an area where Congress did not intend for the CMS to create standards and regulate. As discussed above, at least some of plaintiffs claims regardless of how they are plead arise under an area which the Congress intended for CMS to create standards and regulate and thus are preempted.

Therefore, the face of the complaint indicates that at least some of plaintiffs' claims, those for fraud based on misrepresentation regarding marketing, enrollment, filing of claims, benefits, and coverage under the plan, unjust enrichment and breach of contract to the extent these claims result from a failure to pay benefits as promised, are preempted by Section 232 of the MMA and thus establish federal question jurisdiction.

Moreover, there is a grievance procedure created by the MMA to address complaints regarding benefits and coverage provided by Medicare Advantage plans such as HealthSpring. *See* 42 C.F.R. § 422.560, et seq. Also, as an introductory matter, the regulations explain that the scope of Part 422 "establishes standards and sets forth the requirements, limitations, and procedures for Medicare services furnished, or paid for, by Medicare Advantage organizations through Medicare Advantage plans." 42 C.F.R. Ch. IV, Subch B, Part 422, Medicare Advantage Program, 42 C.F.R. § 422.1.

Accordingly, plaintiffs' causes of action based upon defendants' meeting with the plaintiffs, soliciting their enrollment, and making representations as to the quality and scope of benefits and coverage, and as to plaintiffs' ability to continue treatment with their doctors and hospitals, fall within areas which Congress intended to regulate through the MMA, and thus are preempted by federal law. Accordingly, plaintiffs motion to remand as to this issue is DENIED.

**Waiver of right to remove**

■ Plaintiffs also argue that defendants have waived their right to remove. Specifically, plaintiffs state that defendants were not attempting to preserve or maintain the status quo but instead manifested an intent to litigate on the merits in state court by getting a "first jump" on the discovery process by noticing the deposition of the plaintiffs in the Circuit Court of Perry County, Alabama on May 16, 2007 (prior to filing the notice of removal on June 7, 2007).

Defendants respond that plaintiffs rely on speculation as to defendants' intent behind serving the deposition notices and cite to no case law wherein any court has held that serving deposition notices or engaging in discovery amounts to a waiver of the

right to remove. Defendants argue that in order to find waiver, their actions must indicate clearly and unequivocally that they intend to litigate the merits in state court. Defendants assert that by pursuing discovery which could occur under either the state or federal rules of civil procedure, they have not manifested an intent to litigate in state court.

Although the undersigned and the parties did not locate any Eleventh Circuit Court of Appeals case which addressed the issue, the court finds the reasoning of the Northern District of Alabama in *Franklin v. City of Homewood,* 2007 WL 1804411 (N.D.Ala.2007) persuasive. The District Court explained that "[f]iling an answer and making discovery requests are merely 'preliminary actions in a lawsuit, not at all comparable to the sort of dispositive motion addressing the merits of a case that arguably might most clearly demonstrate an intent to litigate.'" *Id.* at *5 quoting *Brown v. Sasser,* 128 F.Supp.2d 1345, 1348 (M.D.Ala.2000).[10] The Northern District also relied upon *Fain v. Biltmore Secs., Inc.,* 166 F.R.D. 39, 42 (M.D.Ala.1996) wherein the Middle District of Alabama explained that in order to "determine whether a right to remove has been waived, a court must first determine whether actions taken by defendants in state court were for the purposes of preserving the status quo or manifested an intent to litigate on the merits in state court." *Franklin,* at *5.

Defendants have not clearly and unequivocally indicated an intent to litigate in state court by serving notice of the plaintiffs' depositions, but rather have taken preliminary action in a lawsuit which arguably preserves the status quo. As defendants point out, discovery will be pursued under the auspices of either federal court or state court. Thus, the act of filing a notice of deposition in state court does not indicate an intent to litigate on the merits in state court but rather an intent to begin the discovery process: a necessary part of litigation in either court. Therefore, defendants have not waived their right to remove the case.

## IV. *Conclusion*

Upon consideration of the foregoing and for the reasons set forth herein, the motion to remand (doc. 6) is **DENIED** and this court will exercise its supplemental and pendant jurisdiction pursuant to 28 U.S.C. § 1367(a) over any remaining state law claims to the extent they are not preempted.

---

**10.** The *Brown,* court noted "waiver might also exist where the facts indicate that removal is, in effect, an appeal from an adverse state court judgment." 128 F.Supp.2d at 1348 n. 3.